IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HENRY SAYE GOFAN JUNIOR,

        Plaintiff,

v.

DARLENE J. PEREKSTA, et al.,

        Defendants.

HONORABLE PETER G. SHERIDAN

Civil Action
No. 16-8559 (PGS-LHG)

**OPINION**

R E C E I V E D

**JUN 2 5 2018**

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

APPEARANCES:

Henry Saye Gofan Junior, Plaintiff Pro Se
210791-C/1147321
Mid-State Correctional Facility
Range Road PO Box 866
Wrightstown, NJ 08640

Arthur R. Sypek, Jr., Mercer County Counsel
Paul R. Adezio, Deputy County Counsel
County of Mercer Office of County Counsel
McDade Administration Building
640 South Broad Street
PO Box 8068
Trenton, NJ 08650-0068
Attorneys for Defendants Ellis, Oliver, Fioravanti, Murzda, Victor, Davis, Walter, Clark,
McMillon, Reese, Johnson, Dillon, Botteri, Whyte, Smith, Paterson, Peters, Marshall, Wilson,
and Scott

Lester E. Taylor, III, Esq.
Shontae D. Gray, Esq.
Florio Perrucci Steinhardt & Fader, LLC
218 Route 17 North, Suite 410
Rochelle Park, NJ 07662
Attorneys for Defendants Kevin B. Starkey and William B. Mulryne

Gurbir S. Grewal, Attorney General of New Jersey
Andrew Christopher Munger, DAG
New Jersey Department of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street
PO Box 116
Trenton, NJ 08625
Attorneys for Defendants Steven Elmer, John A. Tonelli, William B. Ziff, and Sue Regan

**SHERIDAN, District Judge:**

## I. INTRODUCTION

This matter comes before the Court on three motions for summary judgment filed by

defendants N. Botteri, Clark, S.H. Davis, M. Dillon, Charles Ellis, Fioravanti, C. Johnson,

Murdza (improperly pled as "Marza"), McMillion, Oliver, R. Santiago Paterson, Charles Peters,

Reese, Scott, Victor, Officer Walter (improperly pled as "Walt"), Whyte, Marshall, Smith, Todd

Wilson ("MCCC Defendants") (ECF No. 55); Trenton Police Officers Mulryne and Starkey

(ECF No. 61); and, Sue Regan, John A. Tonelli, William B. Ziff (collectively the judiciary

defendants) and Officer Steven Elmer. (ECF No. 68). Plaintiff filed written opposition. (ECF

Nos. 63 & 66).

After reviewing the submissions and arguments of the parties at oral argument, the Court

will grant summary judgment to the judiciary defendants, Clark, Johnson, Smith, Whyte,

Fiorvanti, Murzda, McMillon, Walter, Scott, Victor, and Marshall. Summary judgment is

granted in part to Officers Mulryne and Starkey and Officer Elmer. Summary judgment is denied

without prejudice as to Officers Botteri and Dillon and to Officer Elmer on Plaintiff's excessive

force and warrantless blood draw and fingerprint claims.

The Court reserves its ruling on Paterson, Ellis, Davis, Reese, Marshall, Peters, Wilson,

and Oliver pending a hearing on Plaintiff's exhaustion of administrative remedies to take place

on June 26, 2018.

## II. BACKGROUND

Plaintiff, previously a pretrial detainee in the Mercer County Correctional Center ("MCCC") and now a convicted state prisoner in Mid-State Correctional Facility, filed a complaint raising a variety of claims based on his criminal prosecution and conditions of confinement. Compl., ECF No. 1.

Plaintiff initially raised claims against 45 defendants. In its screening opinion, the Court dismissed several defendants from the case with prejudice as they were attorneys from either the Public Defender's Office or private attorneys who at one time or another defended Plaintiff in the criminal proceedings, and therefore not persons acting under the color of law. (ECF No. 7 ¶ 2). The Court also dismissed judges involved with Plaintiff's criminal case as being immune from suit, (ECF No. 7 ¶ 3), and Plaintiff's malicious prosecution, omission of exculpatory evidence, conspiracy, and fraudulent concealment claims for failure to state a claim. (ECF No. 7 ¶¶ 4-6). It also dismissed several defendants from the Mercer County Prosecutor's Office due to prosecutorial immunity. (ECF No. 7 ¶ 4). It permitted the remaining claims in the Complaint, including but not limited to claims of false arrest, illegal seizure, denial of access to the courts, and excessive force, to proceed. (ECF No. 7 ¶ 7).[1]

Defendants filed motions to dismiss in May 2017. (ECF Nos. 24, 27, & 28). The Court administratively terminated the motions in October 2017, explaining that its primary concern "with regard to the Complaint was Plaintiff's allegation that he was unaware why he was arrested and detained by the State of New Jersey. However, at oral argument [on the motions to dismiss], Defendants informed the Court that Plaintiff has three outstanding indictments against

---

[1] As the complaint is at times disjointed and defendants are moving for summary judgment on different claims, the Court will discuss the facts of the claims along with the defendants' arguments for ease of reference.

3

him, with the latest indictment related to the incident alleged in the Complaint, which charged Plaintiff with eluding and resisting arrest." (ECF No. 50). The Court indicated that it could not consider documents outside the complaint on a motion to dismiss, but permitted Defendants to submit early summary judgment motions on those claims.

The MCCC defendants moved for summary judgment on October 27, 2017. (ECF No. 55). Officers Mulryne and Starkey filed their motion on November 27, 2017, (ECF No. 61), and the judiciary defendants and Officer Elmer filed on December 22, 2017, (ECF No. 68). Plaintiff filed opposition papers on December 5, 2017, (ECF No. 63), and December 15, 2017, (ECF No. 66). The Court also received copies of a filing submitted to the New Jersey Superior Court, Appellate Division, (ECF No. 71), and a letter from Plaintiff asking the Court to consider ECF No. 66 as opposition to the judiciary defendants' summary judgment motion, (ECF No. 80).

The Court conducted oral argument on May 23, 2018 at which time Plaintiff appeared telephonically. (ECF No. 90).

## III.    STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v.*

4

*Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary

judgment cannot rest on mere allegations and instead must present actual evidence that creates a

genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v.*

*Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). "[U]nsupported allegations ... and

pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912

F.2d 654, 657 (3d Cir. 1990). Moreover, only disputes over facts that might affect the outcome

of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477

U.S. at 247–48. If a court determines, "after drawing all inferences in favor of [the non-moving

party], and making all credibility determinations in his favor that no reasonable jury could find

for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir.

2007). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or

defenses" before those issues come to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

(1986).

## IV.   DISCUSSION

### A. MCCC Defendants' Motion for Summary Judgment (ECF No. 55).

#### 1. Failure to Exhaust Administrative Remedies

The MCCC Defendants move for summary judgment on Plaintiff's claims of access to

the courts against Paterson, Ellis, Davis, Reese, Marshall, Peters, Wilson, and Oliver as Plaintiff

failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA")

of 1995 before filing suit. (ECF No. 55-5 at 12). Plaintiff alleged these defendants interfered with

his ability to send various faxes to the Superior Court and his attorneys, prevented him from

going to the law library, and refused to notarize documents:

- "Ms. R. Santiago Program Service here at the jail start refusing to fax my
messages to Vernon Clash stating that he was retiring . . . then she lied that they
cut off their fax machine off at the Mercer County Public Defenders Office

5

depriving me the right to access Mr. Clash in order to access the courts in a timely fashion with her actions Professional Misconduct knowingly engaging in a conspired act of the deprivation of rights . . . ." Compl. at 13-14.

- "I was told by a reliable Sourse [sic] Counselor, Warden Ellis even mentioned something about me having the complaint faxed to William B. Ziff, now he knowingly engaged in the ace of Fraudulent Concealment by allowing these acts to continue . . . ." *Id.* at 20.

- "[T]he counselor Program Service Ms. R. Santiago Paterson and S.H. Davis C/O and C/O Reese intentionally tampered with my legal mail and stop[p]ed it from reaching the court on the 12-16-2015 court date AFFIDAVIT OF TRUTH has all the details . . . .[2] also how Ms. Marshall or Saunders same lady notary here at the Jail is refusing to notarize legal documentation deprived me and other inmates the rights to access the courts, she just started notarizing my documentations and it's always a problem to do that . . . ." *Id.* at 31.

- "Ms. R. Santiago Paterson made up a Memo Refusing to fax a number of Affidavit for a while depriving me the constitutional right to access the court and Defendant Charles Ellis allowed it's [sic] like these people here are knowingly conspiring with the courts to, warden Ellis did not allow the Officers to tamper with my mail, but he allowed Program Service to not fax our Messages to the courts . . . ." *Id.* at 32.

- "I had also gave [sic] Ms. R. Santiago Paterson an Manilla Envelope to stamp for postage on March 3, 2016 with instructions to give to back to me after stamping I never got it back on March 4, 2016 Friday I spoke with her on the I.D.R. Area and she stated that she will stamp and return it to me then later on that day she Ms. Santiago Paterson left without giving me my envelope and come Monday the 7th of March 2016, she Ms. Santiago Paterson state that we never talked about that in I.D.R. we had words and I wrote her up with a grievance and Mr. Charles Peters or Peterson gave it back stating false claims that I'm always blaming Prograservice [sic] staff for stuff being disruptive. . . ." *Id.* at 34.

- "Mr. Peters is the new counselor for SE South East unit, and I gave him a Manilla envelope on March 24, 2016 to be stamped for postage and he stamped the envelope and Mr. Wilson brought the envelope back, but the Receipt that I signed not paying attention because I was worried about my extra law library time, he, Todd Wilson, told me to sign in one spot then I did still talking to him, then he stated no the other spot . . . [A few days later] I noticed that the receipt

---

[2] In an attached document labeled an Affidavit of Truth, Plaintiff states: "Ms. Santiago did not want to fax my papers to criminal case management after reading over my Affidavit of Reservation of Rights under Uniform Commercial Code 1-308/1-207 performance or Acceptance under reservation of rights . . . ." (ECF No. 1-3 at 6).

that Mr. Wilson gave me had three addresses that I never had any thing go to . . . I asked for a notarized letter from Mr. Peters or Peterson stating that I did not even have any envelopes to the addresses and if anything was mailed out that it was not my doing Mr. Peterson wrote a letter so I let it go but later on the day he wrote the letter, he came to the Unit and started acting crazy because I needed something else notarized by Ms. Marshall and she was ducking me why I do not know because She Ms. Marshall or Ms. Pamela L Saunders did not come to see what papers that I had, but Peters or Peterson, same individual. . . . I strongly feel that Mr. Charles Peters or Peterson Fraudulently mailed something to tamper with my commercial Affidavit of Truth . . . ." *Id.* at 36-37.

- "[E]ven Lt. Oliver has tampered with my outgoing mail to Washington DC I wrote up a Grievance, but it vanished, however, Plaintiff made a copy before it was turned in to C/O Clark with witnesses that signed it." *Id.* at 38-89.

Under the PLRA, prisoners must exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). An access to the courts claim is subject to the PLRA's exhaustion requirement. *See Jones v. Domalakes*, 312 F. App'x 438, 439–40 (3d Cir. 2008).

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further

7

avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). "Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

Although a district court may decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts, *see Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013), the Court finds that an evidentiary hearing on the exhaustion of administrative remedies is necessary before the Court can resolve the disputed facts.

Defendants have provided the portion of the MCCC inmate handbook setting forth the inmate grievance procedure. (Exhibit A to Ellis Certification, ECF No. 55-4). According to the handbook:

> All grievances and problems should be presented through the Chain-of-Command. Grievances should first be verbally discussed with the Living Unit Officer. . . . If the Living Unit Officer is unable to resolve the matter, he will contact a Superior Officer and the inmate to address the matter with that Superior Officer. If the Superior Officer is unable to resolve the matter he will have the inmate fill out a Grievance Form. The Completed Grievance will be signed by the Superior Officer. The completed Grievance will then be forwarded to the Captain for appropriate action in a timely manner.

(Inmate Handbook ¶ 44(a)). Inmates then present their problem to the Director of Public Safety. (Inmate Handbook ¶ 44(b)). They may then escalate to the Office of the Inmate Advocacy if they are unsatisfied with the response. (Inmate Handbook ¶ 44(c)). Warden Ellis certified that Plaintiff did not follow this procedure before filing this lawsuit. (Certification of Charles Ellis, ECF No. 55-4 ¶ 6). Plaintiff asserts that he followed the grievance procedure and that he "stands on his documents." (ECF No. 66 at 173-74). Plaintiff alleges in his complaint that a grievance regarding Lt. Oliver's tampering with his mail "vanished" but that he kept a copy. Compl. at 39.

8

In opposition to summary judgment, Plaintiff submitted an affidavit stating that he complied with the grievance procedure. (ECF No. 66-3 at 42). He continued to argue at oral argument that he complied with the relevant grievance procedures and that the MCCC defendants failed to respond to his grievances.

The MCCC defendants rely on the absence of any grievances relating to Plaintiff's access to the court claim as definitive evidence that Plaintiff did not exhaust this issue. "[T]he success of this argument depends on the reliability of the Prison's recordkeeping system. Here, the record is bereft of evidence that the Prison's recordkeeping system is reliable. Without such evidence, we cannot determine if Defendants have met their burden to prove that [plaintiff] 'failed to exhaust *each* of his claims.'" *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018) (emphasis in original). In light of the disputed factual issues, the Court will conduct a hearing on June 26, 2018 at which time Plaintiff shall be present in court and shall give sworn testimony regarding his exhaustion of administrative remedies for his access to the courts claim.[3] The Court reserves its ruling on this claim pending the hearing.

*2. No Claims Against Clark, Johnson, Smith, Whyte, or Fioravanti*

The MCCC Defendants also argue Plaintiff has not stated any claim against several defendants, Clark, Johnson, Smith, Whyte, or Fioravanti, listing them only in the "Parties" list or only mentioning them in passing in the complaint. (ECF No. 55-5 at 14). Plaintiff states only that he stands on his documents. (ECF No. 66 at 173-74).

The Court will grant summary judgment to these defendants. The complaint does not make any allegations against these defendants of a constitutional violation, nor do the submitted

_____

[3] Plaintiff shall also submit to the Court any copies of grievances he has in his possession or direct the Court to the *specific* place in the record where they may be found.

documents support any claims against them. No rational jury could return a verdict in Plaintiff's favor against these defendants. They are entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### 3. Excessive Force Claim Against Botteri and Dillon

Officers Botteri and Dillon assert they are entitled to qualified immunity on Plaintiff's claim of excessive force. The Court finds there are disputed issues of fact and will therefore deny qualified immunity without prejudice.

Plaintiff alleges that on December 26, 2015, Judge Pereksta, a judge of the New Jersey Superior Court, Mercer County, told Officers Botteri and Dillon to remove Plaintiff from the courtroom, at which point they "turned into madmen when they used violent force to remove [him] . . . ." Compl. pg. 32. An Internal Affairs investigation concluded "the officers followed the appropriate department policies and procedures." (Sypek Certification Exhibit B, ECF No. 55-2 at 9). Defendants argue they are entitled to qualified immunity as they were following a lawful court order.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (internal citation and quotation marks omitted).

10

The alleged use of force occurred while Plaintiff was in pretrial custody. A pretrial detainee asserting an excessive use of force claim need only show that the force purposely, knowingly, or possibly recklessly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2472 (2015). A non-exclusive list of factors bearing on the reasonableness or unreasonableness of the force used includes: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 2473.

For the second prong, the Supreme Court has held that a right is clearly established when the right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor*, 135 S. Ct. at 2044 (internal citation and quotation marks omitted). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. *Ibid.* (internal citations omitted). The resolution of the qualified immunity defense entails a fact-specific inquiry. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). There need not be a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044 (internal quotation marks omitted).

Officers Dillon and Botteri assert they are entitled to qualified immunity because Judge Pereksta ordered them to remove Plaintiff from the courtroom. Plaintiff alleges Officers Dillon

11

and Botteri used excessive force "by physically choking me, by pulling my jail issued garment from my neck causing restriction to my neck and also causing laserations [sic] to my neck and breathing throat organs." Compl. Relief ¶ 5.[4] Plaintiff wrote a letter to the Mercer County Superior Court Criminal Case Management Office describing the officers' conduct as "extremely violent." (ECF No. 66-3 at 9). Adopting Plaintiff's version of events for purposes of summary judgment, he has alleged a violation of his constitutional right to be free from excessive force when being removed from a courtroom pursuant to a judicial order. *See Tolan,* 134 S. Ct. at 1866 ("[U]nder either prong [of the qualified immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

"[E]ven though there may be no previous precedent directly on point, an action can still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with obvious clarity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). In an analogous situation, Judge Simandle denied qualified immunity to an officer alleged to have used excessive force on an elderly witness in removing her from a court proceeding pursuant to the order of the presiding judge. Judge Simandle noted that "it would have been clear to a reasonable officer . . . that forcibly lifting a non–resisting [person] and carrying [him] out of the courtroom was excessive." *Ingram v. Twp. of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) (denying qualified immunity under the Fourth Amendment's reasonableness standard). There is no dispute that the officers removed Plaintiff from the courtroom pursuant to an order from Judge Pereksta. Officers Botteri and Dillon properly followed an order from the court, but officers may not use excessive force to carry out that order. The force alleged to have been used

---

[4] Officers Dillon and Botteri assert Plaintiff "confirmed that he suffered no compensable injury resulting from this particular episode." (ECF No. 55-5 at 15). They do not point to what portion of the record supports this statement.

12

in this instance is much greater than the force used in *Ingram*, and accepting Plaintiff's version of events he was not resisting in any manner and did not pose a threat to anyone's safety. A reasonable officer would have known that choking an unresisting detainee was objectively unreasonable under the circumstances.

There has been no discovery on this claim, and Plaintiff stated during oral argument that his requests for the video from the courtroom were denied. The Court denies qualified immunity to Officers Dillon and Botteri without prejudice as further discovery on this claim would be prudent.

*4. Access to the Courts claim against defendants Murzda, McMillon, Walter, Wilson,[5] Scott, Victor, or Marshall.*

The MCCC Defendants finally argue that Plaintiff has no viable claim against Murzda, McMillon, Walter, Wilson, Scott, Victor, or Marshall. In an Affidavit of Truth attached to the complaint, Plaintiff states that Officer Walter refused to permit him to go to the law library to make copies of the complaint. (ECF No. 1-3 at 1). He asked Officer McMillon to help him, but she conspired with Officer Walter and refused to call the sergeant. (*Ibid.*).

Plaintiff asked Officer Jackson to tell Sgt. Murzda that Plaintiff needed to speak with him. Sgt. Murzda came by a few days later, and Plaintiff told him in front of Officer Walter that Officer Walter was not letting him go to the law library. Officer Walter said Plaintiff could not go, but Sgt. Murzda told Plaintiff he could go. (*Id.* at 2). Plaintiff made his copies and gave them to Wilson, but his envelope was never stamped. (*Ibid.*). He alleges this was intentional. He further states that Officer Walter went into his area while Plaintiff was in the library and

---

[5] The Court presumes this is a different access to the courts claim than the one for which the MCCC defendants argue Plaintiff has not exhausted his administrative remedies against defendant Wilson.

13

"sabotaged" it. (*Ibid.*). Plaintiff complained to Officer McMillon, but she was "extremely unprofessional." (*Ibid.*). He alleges that Officer Walter went through his legal papers and took the list of named defendants. (*Id.* at 3). Plaintiff reported the incident to Sgt. Murzda and requested a grievance form, but he would not give Plaintiff one. (*Id.* at 4). Sgt. Murzda asked Officer Walter if he would "stop what he's doing." (*Ibid.*) Officer Walter replied he would "let it go, if [Plaintiff] does," which Plaintiff understood to mean if Plaintiff did not file a grievance about the situation. (*Ibid.*). Plaintiff further alleges Ms. Scott prohibited him from asking other inmates to copy his paperwork. (*Ibid.*). She also did not mail his complaint out on the day Plaintiff wanted it to go out. (*Id.* at 5-6).

Access to the courts claims fall into two general categories. "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). "In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Ibid. See also Gibson v. Superintendent of NJ Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010). A plaintiff must be able to plead that "a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis v. Casey*, 518 U.S. 343, 353 (1996). This appears to be the type of access claim Plaintiff is alleging in his complaint.

The Supreme Court has "consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 824

14

(1977). "To establish a cognizable [access to the courts] claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a claim." *Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012) (citing *Christopher*, 536 U.S. 403, 415 (2002)). The relevant injury in an access to the courts claim is the loss of or impairment to a non-frivolous claim regarding Plaintiff's criminal conviction or the conditions of his confinement, not mental or emotional injuries. *Christopher*, 536 U.S. at 415; *Monroe v. Superintendent Coal Twp. SCI*, 597 F. App'x 109, 112-13 (3d Cir. 2015). The record shows that Plaintiff's complaints about copies and access to the library concern the instant litigation. Plaintiff has not opposed the summary judgment motion with any evidence that defendants have impaired his current litigating capability. *See Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). *See also Stone v. Sec'y United States Dep't of Homeland Sec.*, 705 F. App'x 76, 78 (3d Cir. 2017) ("[T]he non-moving party may not rest upon the mere allegations or denials of his pleadings[.]" (internal quotation marks omitted)). Plaintiff has filed his complaint with this Court along with several other documents and motions. (*See, e.g.,* ECF No. 3, 40, 43, 45). Plaintiff has not produced any admissible evidence that would permit a reasonable jury to determine that defendants' actions caused him an injury. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). Defendants Murzda, McMillon, Walter, Wilson, Scott, Victor, and Marshall are granted summary judgment on this claim.

**B. Officers Mulryne's and Starkey's Motion for Summary Judgment (ECF No. 61)**

Officers Mulryne and Starkey argue they are entitled to summary judgment because there

is no cause of action for perjury under § 1983 and Plaintiff's Fourth Amendment claim is barred

by *Heck v. Humphrey*, 512 U.S. 477 (1994).

*1. Perjury*

Plaintiff alleges Officer Starkey lied during a pretrial hearing on June 30, 2015 when

Officer Starkey allegedly testified inconsistently with his reports:

> Judge Darlene J. Pereksta knowingly violated her oath again to protect uphold the
> constitution, by stating that she found the Trenton Police Officer credible, how is
> that possible when she has discovery in front of her with the inconsistant [sic]
> Police Affidavit of Probable Cause which was not the same story that Officer Kevin
> B. Starkey told in his narrative report which he also stated that the affidavit of
> probable cause was a typo. I thought a typo was a mispelled [sic] word not a whole
> different story, see discovery to verify this TRUTH, how one Officer told two not
> one but two different stories in one day on the same day . . . which the CAD Report
> said a lot see how this lyer [sic] was said to found credible by someone who is
> knowingly violating the Public TRUST using her cloak to deceive the people, I also
> mailed Judge Darlene J. Pereksta the CAD report Lab report with both inconsistant
> [sic] reports from Kevin B. Starkey with letters that she mentioned in open court .
> . . but she Judge Pereksta claimed that she found this lyer [sic] credible . . . .

Compl. pg. 26-27. (*See also* Plaintiff's response to Officer Starkey's Motion to Dismiss, ECF

No. 32).

The claims against Officer Mulryne are not stated in the complaint, as the only place his

name appears in the complaint is the "Parties" list. Compl. ¶ I1. However, Plaintiff included a

transcript of Officer Mulryne's grand jury testimony from September 13, 2013 in his opposition

materials. (ECF No. 66-2 at 32). The transcript concerns Mercer County Indictment 13-09-1166

charging Plaintiff with assault by auto.[6] Plaintiff wrote "perjury under oath! Prosecutorial

misconduct, abuse of grand jury process" in the margins under one of Officer Mulryne's

---

[6] Because the transcript makes also allegations against a third-party who is not involved with
these proceedings, the Court will order ECF No. 66-2 to be sealed to protect the third-party's
privacy interests.

16

answers. (*Id.* at 40) Thus, it appears he is alleging that Officer Mulryne perjured himself at the grand jury proceedings.[7]

The Supreme Court has long held that witnesses have civil immunity for their testimony during trial proceedings. "The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law." *Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983) (citing *Cutler v. Dixon*, 76 Eng. Rep. 886 (K.B.1585)). "A witness's apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability." *Id.* at 333 (citing *Henderson v. Broomhead*, 157 Eng. Rep. 964, 968 (Ex. 1859)). "When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness sworn to tell the truth - in which event he can make a strong claim to witness immunity. . . . Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damages suits." *Id.* at 335–36. "Police officers testify in scores of cases every year, and defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses." *Id.* at 343. *See also Franks v. Temple Univ.*, 514 F. App'x 117, 122 (3d Cir. 2013) (holding that "a witness, including a police officer, has absolute immunity with respect to any claim based on the witness' testimony" (internal quotation marks omitted) (emphasis in original)). A grand jury witness has absolute immunity from suit under § 1983 based on his or her testimony. *Rehberg v. Paulk*, 566 U.S. 356, 375 (2012) ("[A] grand jury witness is entitled to the same immunity as a trial witness.").

---

[7] Plaintiff pled guilty to the assault by auto charges on October 24, 2017. (ECF No. 61-1 at 93).

17

To the extent the claims could be construed as malicious prosecution claims, the Court dismissed all malicious prosecution claims in its § 1915 screening opinion in February 2017. (ECF No. 7 ¶ 4). The Court concluded in that opinion that Plaintiff could not meet the favorable termination element as the criminal prosecution was ongoing at that time. (*Ibid.*). Officers Mulyrne and Starkey are entitled to judgment as a matter of law on Plaintiff's claims of perjury.

*2. False Arrest*

Officer Starkey also asserts that Plaintiff's false arrest claim under the Fourth Amendment is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). According to Plaintiff's response to Officer Starkey's motion to dismiss, Plaintiff was on the porch of 234 Ardmore Avenue in Trenton with a friend on July 1, 2013, when several officers pulled up and exited their vehicles with their weapons drawn. (ECF No. 32 at 2). Plaintiff refused to follow the directive to get on the ground because it was wet, but he did put his hands in the air. (*Ibid.*) Both Plaintiff and his friend denied having any weapons when asked by the police. (*Id.* at 2-3). Officer Starkey entered the house and searched it and the porch while Plaintiff and his companion waited on the porch. (*Ibid.*). Officer Starkey then picked up a black, plastic bag from under a chair and pulled out a gun; Plaintiff was handcuffed and placed in a vehicle. (*Id.* at 3). Plaintiff denied owning or possessing the gun. (*Id.* at 4). He was charged with possession, and when he asked why he was being charged when it was not his, an officer replied that the police did not know to whom the gun belonged. (*Ibid.*). Plaintiff alleges that Officer Starkey created false reports about this encounter, alleging that he had seen a gun in Plaintiff's left hand. (*Id.* at 5).

Officer Starkey testified at the motion to suppress hearing in Plaintiff's criminal proceedings that he received information that "a black male wearing a white tank-top, black shorts, black sneakers was sitting on the porch at 234 Ardmore Avenue, may be in possession of

18

a handgun." (Transcript 6:8-11, ECF No. 61-1 at 55). He further testified Plaintiff threw the gun to the ground when the officers arrived at the scene. (Transcript 12:7). He testified that he observed a weapon in Plaintiff's right hand, and that it was a mistake in his affidavit of probable cause when he said the weapon was in the left hand. (Transcript 40:19 to 41:12). Judge Pereksta denied the motion to suppress. (ECF No. 61-1 at 91). On October 24, 2017, Plaintiff pled guilty in the New Jersey Superior Court to unlawful possession of a handgun under Indictment 13-10-1280. (*Id.* at 93). Officer Starkey asserts that Plaintiff's false arrest claim now precluded under *Heck* due to Plaintiff's subsequent conviction.

In *Heck*, the Supreme Court held that before a § 1983 plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486–87; *see also Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 346 (3d Cir. 2015) ("'[A] prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element.' " (alteration in original) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009))).

"Under some circumstances, a false arrest claim may proceed in an action under 42 U.S.C. § 1983 despite a valid conviction." *Woodham v. Dubas*, 256 F. App'x 571, 576 (3d Cir. 2007). *See also Shelley v. Wilson*, 152 F. App'x 126, 129 (3d Cir. 2005) (citing *Gibson v. Superintendent of N.J.*, 411 F.3d 427, 449 (3d Cir. 2005) ("A claim for false arrest does not necessarily implicate the validity of a conviction or sentence.")); *Montgomery v. De Simone*, 159

19

F.3d 120, 126 (3d Cir. 1998) ("[A] conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest."). "If a plaintiff files a false-arrest claim before he has been convicted . . . it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal . . . ." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007).

Plaintiff's false arrest claim against Officer Starkey is based on a charge of unlawful possession of a handgun on July 1, 2013. (*See* Superseding Indictment, ECF No. 63 at 32; *see also* Certification of Assistant Mercer County Prosecutor Michael A. Nardelli, ECF No. 61-1 at 49 ¶ 3(b) (referencing original Indictment 13-10-1280 charging Plaintiff with unlawful possession of a handgun, receiving stolen property, and certain persons not to possess a firearm. "This indictment arises out of an incident which occurred on or about July 1, 2013 in the City of Trenton.")). Petitioner pled guilty to that offense on October 24, 2017. (Nardelli Cert. ¶¶ 4-5). Plaintiff 's false arrest claim alleges Officer Starkey was without probable cause to arrest him because he did not possess a handgun on July 1, 2013. Success on this false arrest claim would necessarily invalidate Plaintiff's guilty plea to Indictment 13-10-1280. Other courts have concluded similar claims are *Heck*-barred. *See, e.g., Jones v. Mermon*, 507 F. App'x 100, 103 (3d Cir. 2012) (*Heck* barred false arrest claim where "[the defendant's] allegation that the criminal complaint against him and his arrest were false implicate[d] the validity of his conviction...."); *Greene v. Perez*, No. 2:13-5493, 2016 WL 3063865, at *2 (D.N.J. May 31, 2016) ("In this case, Greene's false arrest and false imprisonment claims do implicate the validity of his conviction because they are premised on the theory that Greene did not commit the crimes that have landed him in prison."); *Brenner v. Twp. of Moorestown*, No. 09-219, 2011 WL

1882394, at \*6 (D.N.J. May 17, 2011) ("Because Plaintiff pled guilty to obstructing the administration of law—the very same offense that Officers Mann, Jr. and Pascal arrested him for—a finding that the officers lacked probable cause would necessarily invalidate Plaintiff's guilty plea. Therefore, *Heck* forecloses Plaintiff's false arrest claim.").

Plaintiff's opposition is limited to his assertion that he stands on his documents and that he was coerced into pleading guilty by Judge Billmeier. (ECF No. 63 at 2). Because Plaintiff cannot show that his guilty plea has been vacated, his false arrest claim is currently barred by *Heck*. The Court will not grant judgment on the merits, however. In light of his allegations of an involuntary plea and Plaintiff's assertions that he intends to challenge the validity of his plea in state court, the Court will dismiss this claim without prejudice to refiling if the underlying judgment of conviction is vacated. *See Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999). Plaintiff will have to file a new complaint in the event his plea is vacated or otherwise overturned.

## C. Defendants' Steven Elmer, Sue Regan, John A. Tonelli, and William B. Ziff Motion For Summary Judgment (ECF No. 68)

Sue Regan, John A. Tonelli, and William B. Ziff and Officer Steven Elmer, also move for summary judgment on the claim against them.

### 1. Eleventh Amendment Immunity

The judiciary defendants, consisting of Trial Court Administrator Sue Regan, former Executive Director for Advisory Committee on Judicial Conduct ("ACJC") John A. Tonelli, and William Ziff of the Office of Attorney Ethics, argue the claims against them in their official capacities are barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

21

commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). "Defendants sued in their official capacities are entitled to claim the same Eleventh Amendment immunity that the 'entity, qua entity, may possess.'" *Karns v. Shanahan*, 879 F.3d 504, 519 n.5 (3d Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)).

New Jersey courts have been found to be "arms" of the state for purposes of the Eleventh Amendment. *See Johnson v. State of N.J.*, 869 F. Supp. 289, 296–97 (D.N.J. 1994). Likewise, courts have held that the Office of Disciplinary Counsel, Public Defender System, and state bar associations are immune from suit under the Eleventh Amendment. *Ibid.* (citing cases). The ACJC is a committee created by the New Jersey Supreme Court and has immunity from suit under New Jersey law. *See* N.J. Ct. R. 2:15-22(a) ("The members and staff of the Committee shall be absolutely immune from suit, whether legal or equitable in nature, for any conduct in the performance of their official duties."). The Third Circuit has previously held that the ACJC "entity and its employees are entitled to Eleventh Amendment immunity." *Capogrosso v. The Supreme Court of New Jers*ey, 588 F.3d 180, 185 (3d Cir. 2009). "[J]udges in this district and elsewhere have consistently considered the OAE, as a creation of the New Jersey court system, to be one such 'arm' of the state that enjoys sovereign immunity." *Abulkhair v. Office of Attorney Ethics New Jersey*, No. 2:16-03767, 2017 WL 2268322, at \*6 (D.N.J. May 24, 2017),

22

*appeal dismissed sub nom. Abulkhair v. Office of Attorney Ethics*, No. 17-2328 (3d Cir. Aug. 17,

2017). *See also Prall v. Supreme Court*, No. 11–7004, 2013 WL 1405880, at *7 (D.N.J. Apr. 4,

2013) ("Moreover, [the OAE is an] "arm[ ]" of the Supreme Court of New Jersey and likewise

[is] entitled to share in the[ ] state's sovereign immunity.").

The judiciary defendants are also not "persons" subject to suit under § 1983 in their

official capacities. In order to set forth a prima facie case under § 1983, a plaintiff must show:

"(1) a person deprived him of a federal right; and (2) the person who deprived him of that right

acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633

(3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Generally, for purposes of

actions under § 1983, "[t]he term 'persons' includes local and state officers acting under color of

state law." *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir. 1996) (citing *Hafer v. Melo*, 502 U.S. 21

(1991)). "Person" is not strictly limited to individuals who are state and local government

employees, however. For example, municipalities and other local government units, such as

counties, also are considered "persons" for purposes of § 1983. *See Monell v. N.Y.C. Dep't of

Social Services*, 436 U.S. 658, 690–91 (1978). A State, agency, or an official of the State acting

in his or her official capacity, is not a "person" within the meaning of 42 U.S.C. § 1983. *See Will

v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A suit against a public official "'in his

or her official capacity is not a suit against the official but rather is a suit against the official's

office . . . .'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will*, 491 U.S. at 71).

The judiciary defendants are entitled to Eleventh Amendment immunity and are not

"persons" under § 1983 in their official capacities. They are entitled to judgment as a matter of

law.

*2. Qualified Immunity*

The judiciary defendants also allege they are entitled to qualified immunity. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.' 'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Ibid.* (quoting *al-Kidd*, 563 U.S. at 741).

The judiciary defendants are entitled to qualified immunity because Plaintiff has not established they violated a federal statutory or constitutional right. Plaintiff appears to be alleging that Sue Regan received faxed documents from him in which he objected to the manner in which his criminal trial was progressing and in which he reported alleged misconduct by the trial court and his then-trial counsel. Compl. at 9. She did not respond to him. *Ibid.* He also alleges that William Ziff did not respond to Plaintiff's faxed misconduct complaint other than to instruct Mercer County Correctional Center not to fax him anything. *Id.* at 20. He states he also sent complaints to John Tonelli and he has "the response at home to verify his engaging in fraudulent concealment of the action that injured me and deprived me of my right to remain at liberty." *Id.* at 21.

It is not clear what materials were allegedly sent to the judiciary defendants, but Plaintiff's summary judgment opposition materials do include a November 2, 2015 fax sent to the Public Defender's Office, with copies sent to the judiciary defendants. (ECF No. 66-3 at 20). Plaintiff asserts in that document that the "whole Public Defenders Office knowingly engaged in

24

the Silence, Fraudulent, non moral to speak, also unanswered inquired to intentionally mislead me into the dark." (Id. at 21). He also accuses the "B.A.R. Association" of being "founded and ran by Communists under definition." (*Ibid.*). Under the facts alleged in the complaint and considering the record before the Court, Plaintiff has not stated a violation of a federal right. The judiciary defendants are therefore entitled to qualified immunity.

   *3. Claims Against Officer Elmer*

   Plaintiff's final set of claims, false arrest, illegal search and seizure, and excessive force, are against New Jersey Transit Police Officer Steven Elmer. Officer Elmer asserts he is entitled to qualified immunity.

   Plaintiff alleges that Officer Elmer arrested him without probable cause on May 6, 2014. Compl. ¶ 6. According to the complaint, Plaintiff was at a train station when two transit officers told him to leave. (*Ibid.*). He went and sat in his vehicle and pulled away from the station, but stayed nearby because he was waiting for someone with a friend. (*Ibid.*). A transit officer drove by slowly, and Plaintiff's friend told him to leave because Plaintiff did not have a license. (*Id.* at 1). Plaintiff drove away from the station and was driving down East State Street when he noticed a cop car with its lights on behind him. (*Ibid.*). Plaintiff turned onto Cleveland Street. He tried to park his car, but he hit a truck that was parked in an alleyway. (*Id.* at 2). The officer drove past Plaintiff, backed up, and got out of his vehicle. (*Ibid.*). He instructed Plaintiff to get out of the car but Plaintiff said he could not exit because the door was stuck. (*Ibid.*). According to Plaintiff, the officer then attempted to drag him out of the car's window and maced him. (*Ibid.*). The officer then pulled Plaintiff out of the passenger-side door, put him on the ground, put his knee on Plaintiff's neck, handcuffed him, and took him to his car. (*Ibid.*). Plaintiff then alleges his blood and fingerprints were taken without his consent. (*Ibid.*).

Officer Elmer is entitled to qualified immunity on Plaintiff's false arrest claim as Plaintiff has not sufficiently alleged a violation of a constitutional right. *See Mazuka v. Rice Twp. Police Dep't*, 655 F. App'x 892, 894 (3d Cir. 2016) ("The right implicated in this case is the right to be free from arrest without probable cause, which, despite its breadth, is a bedrock constitutional principle and a clearly established right." (citing U.S. Const. amend. IV)). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "Any law enforcement officer may, without a warrant, arrest any person violating in his presence any provision of chapter 3 of this Title . . . ." N.J. STAT. ANN. § 39:5-25. Plaintiff admitted to Officer Elmer that he was driving without a license, N.J. STAT. ANN. § 39:3-10. (ECF No. 48 "Yes, I did admit to the fact that I had no license, and I never did, No license or permission is required for Travel."). *See* Fed. R. Civ. P. 56(c)(3)("The court need consider only the cited materials, but it may consider other materials in the record."). Plaintiff's admission satisfies the presence requirement. *State v. Dickens*, 325 A.2d 353, 354–55 (N.J. Super. Ct. App. Div. 1974) ("To satisfy the 'presence' requirement, an arresting officer need not be a witness to the offense. An arrest may be made on the admission of the offender to the arresting officer, even though without the admission the officer would not have any knowledge of the offense."). Furthermore, the New Jersey Superior Court Appellate Division has held that § 39:3-10 permits a term of imprisonment or a fine to be imposed on drivers who have never been licensed. *State v. Carreon*, 96 A.3d 305 (N.J. Super. Ct. App. Div. 2014). It was therefore reasonable for Officer Elmer to arrest Plaintiff for driving without a license. A claim for false arrest cannot survive if probable cause exists "as to any offense that could be charged under the circumstances." *Barna*

26

*v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Officer Elmer is therefore entitled to qualified immunity on the false arrest claim.

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "The inquiry into whether this right was violated requires a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 1865-66 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This balancing requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit expanded on *Graham* and concluded that officers should also balance "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). "[T]he central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

Construing the facts in the light most favorable to Plaintiff, he was subject to arrest for driving without a license after being involved in an accident, a non-violent offense. Plaintiff was unable to exit his vehicle when instructed to by Officer Elmer due to a malfunctioning door, at

27

which time Officer Elmer maced him and attempted to pull Plaintiff out of the driver's side window. Compl. at 2. Once Officer Elmer forcibly removed Plaintiff from the passenger-side door, Officer Elmer put Plaintiff on the ground, put a knee on Plaintiff's back, and handcuffed him. (*Ibid.*). There is no indication Plaintiff posed a danger to the community or officer, or that he was armed.

Officer Elmer has not presented the Court with any evidence contradicting the version of events as set forth in the complaint. Officer Elmer's argument would therefore seem to be that even if the encounter took place exactly as Plaintiff alleges it did, he is entitled to qualified immunity for his use of force based on Plaintiff's resisting arrest.[8] Officer Elmer states he was entitled to use physical coercion because Plaintiff was uncooperative in failing to consent to the blood and fingerprint tests, (ECF No. 68-5 at 25); these tests took place after the arrest, however. Again construing the limited information in Plaintiff's favor, any "resistance" consisted of Plaintiff being unable to exit his vehicle when Officer Elmer ordered him out of the car because Plaintiff's car door was broken. If Plaintiff is believed, as the Court must in a summary judgment qualified immunity analysis, a reasonable jury could conclude Officer Elmer used unreasonable force by spraying Plaintiff with mace and dragging him out of the car.

"To conclude that a right is 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Green v. N.J. State Police*, 246 F. App'x 158, 162 (3d Cir. 2007) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (alteration in original)). Under the factors set forth in *Graham and Sharrar*, a reasonable officer would know that spraying an arrestee with mace and

---

[8] The fact that Plaintiff was charged with resisting arrest does not mean the use of force was per se reasonable. *See Nelson v. Jashurek*, 109 F.3d 142, 146 (3d Cir. 1997). Moreover, Plaintiff did not plead guilty to resisting arrest. (ECF No. 68-3 at 8).

28

dragging him out of a car was an excessive use of force just because a car door was stuck. *See Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). Because there has been no discovery on this claim, leaving many factual issues unresolved such as the reason Plaintiff did not exit the car, Officer Elmer is not entitled to qualified immunity on the excessive force charge at this time. *See Paige v. City of New Brunswick*, 680 F. App'x 107, 112 (3d Cir. 2017) (denying qualified immunity when "facts essential to determining the reasonableness of the police action are disputed"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[A] decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

Officer Elmer does not address Plaintiff's claims that he ordered hospital staff to take Plaintiff's blood and fingerprints without a warrant, Compl. ¶ 6, beyond stating that Plaintiff has failed to state a valid claim against him. (ECF No. 68-5). Because the parties have not adequately briefed the issues, the Court denies summary judgment without prejudice.

**V. CONCLUSION**

For the reasons stated above, the judiciary defendants, Officers Mulryne and Starkey, Clark, Johnson, Smith, Whyte, Fioravanti, Murzda, McMillon, Walter, Scott, Victor, and Marshall are dismissed from this matter. Summary judgment is denied without prejudice as to Officers Botteri and Dillon and to Officer Elmer on Plaintiff's excessive force and warrantless blood draw and fingerprint claims. These matters should return to the magistrate judge for further discovery.

The Court reserves its ruling on Paterson, Ellis, Davis, Reese, Marshall, Peters, Wilson,

and Oliver pending a hearing on Plaintiff's exhaustion of administrative remedies to take place

on ~~June 26, 2018~~ *August 9, 2018 at 1:00 pm*. An accompanying Order will be entered.

PETER G. SHERIDAN, U.S.D.J.