NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY SAYE GOFAN JUNIOR,<br><br>Plaintiff,<br><br>v.<br><br>DARLENE J. PEREKSTA,<br><br>Defendants. | Civ. No. 16-8559 (PGS-LHG)<br><br><br><br>MEMORANDUM |

**PETER G. SHERIDAN, U.S.D.J.**

This is a continuation of the summary judgment motion filed by defendants N. Botteri, Clark, S.H. Davis, M. Dillon, Charles Ellis, Fioravanti, C. Johnson, Murdza (improperly pled as "Marza"), McMillion, Oliver, R. Santiago Paterson, Charles Peters, Reese, Scott, Victor, Officer Walter (improperly pled as "Walt"), Whyte, Marshall, Smith, Todd Wilson ("MCCC Defendants"). (ECF No. 55). On June 25, 2018, the Court reserved its ruling on the MCCC Defendants' argument that Plaintiff Henry Saye Gofan, Jr. failed to exhaust his administrative remedies for his claims of access to the courts against Paterson, Ellis, Davis, Reese, Marshall, Peters, Wilson, and Oliver.[1] (ECF No. 93). Evidentiary hearings were conducted on August 9, 2018 and October 4, 2018 at which time Plaintiff appeared in court. (ECF Nos. 99, 111).

Having reviewed the submissions and testimony of the parties, the Court denies summary judgment to the MCCC Defendants on the basis of exhaustion of administrative remedies.

---

[1] The Court provided notice to the parties and an opportunity to submit additional materials on the exhaustion question on March 20, 2018. (ECF No. 82). *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018).

However, it will dismiss the access to the courts claims against the remaining MCCC defendants without prejudice. 28 U.S.C. § 1915(e)(2)(B)(ii) (permitting dismissal of the case "at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted").

**I.**

Plaintiff's allegations against the remaining MCCC Defendants asserted these defendants interfered with his ability to send various faxes and letters to the New Jersey Superior Court and his attorneys, prevented him from going to the law library, and refused to notarize his documents:

- "Ms. R. Santiago Program Service here at the jail start refusing to fax my messages to Vernon Clash stating that he was retiring . . . then she lied that they cut off their fax machine off at the Mercer County Public Defenders Office depriving me the right to access Mr. Clash in order to access the courts in a timely fashion with her actions Professional Misconduct knowingly engaging in a conspired act of the deprivation of rights . . . ." (ECF No. 1 at 34).

- "I was told by a reliable Sourse [sic] Counselor, Warden Ellis even mentioned something about me having the complaint faxed to William B. Ziff, now he knowingly engaged in the ace of Fraudulent Concealment by allowing these acts to continue . . . ." (*Id.* at 41).

- "[T]he counselor Program Service Ms. R. Santiago Paterson and S.H. Davis C/O and C/O Reese intentionally tampered with my legal mail and stop[p]ed it from reaching the court on the 12-16-2015 court date AFFIDAVIT OF TRUTH has all the details . . . .[2] also how Ms. Marshall or Saunders same lady notary here at the Jail is refusing to notarize legal documentation deprived me and other inmates the rights to access the courts, she just started notarizing my documentations and it's always a problem to do that . . . ." (*Id.* at 52).

- "Ms. Santiago Paterson made up a Memo Refusing to fax a number of Affidavit for a while depriving me the constitutional right to access the court and Defendant Charles Ellis allowed it's like these people here are knowingly conspiring with the courts to, warden Ellis did not allow the Officers to tamper

---

[2] In an attached document labeled an Affidavit of Truth, Plaintiff states: "Ms. Santiago did not want to fax my papers to criminal case management after reading over my Affidavit of Reservation of Rights under Uniform Commercial Code 1-308/1-207 performance or Acceptance under reservation of rights . . . ." (ECF No. 1-3 at 6).

2

- with my mail, but he allowed Program Service to not fax our Messages to the courts . . . ." (*Id.* at 53).

- "I had also gave [sic] Ms. R. Santiago Paterson an Manilla Envelope to stamp for postage on March 3, 2016 with instructions to give to back to me after stamping I never got it back on March 4, 2016 Friday I spoke with her on the I.D.R. Area and she stated that she will stamp and return it to me then later on that day she Ms. Santiago Paterson left without giving me my envelope and come Monday the 7th of March 2016, she Ms. Santiago Paterson state that we never talked about that in I.D.R. we had words and I wrote her up with a grievance and Mr. Charles Peters or Peterson gave it back stating false claims that I'm always blaming Prograservice [sic] staff for stuff being disruptive. . . ." (*Id.* at 55).

- "Mr. Peters is the new counselor for SE South East unit, and I gave him a Manilla envelope on March 24, 2016 to be stamped for postage and he stamped the envelope and Mr. Wilson brought the envelope back, but the Receipt that I signed not paying attention because I was worried about my extra law library time, he, Todd Wilson, told me to sign in one spot then I did still talking to him, then he stated no the other spot . . . [A few days later] I noticed that the receipt that Mr. Wilson gave me had three addresses that I never had any thing go to . . . I asked for a notarized letter from Mr. Peters or Peterson stating that I did not even have any envelopes to the addresses and if anything was mailed out that it was not my doing Mr. Peterson wrote a letter so I let it go but later on the day he wrote the letter, he came to the Unit and started acting crazy because I needed something else notarized by Ms. Marshall and she was ducking me why I do not know because She Ms. Marshall or Ms. Pamela L Saunders did not come to see what papers that I had, but Peters or Peterson, same individual. . . . I strongly feel that Mr. Charles Peters or Peterson Fraudulently mailed something to tamper with my commercial Affidavit of Truth . . . ." (*Id.* at 57-58).

- "[E]ven Lt. Oliver has tampered with my outgoing mail to Washington DC I wrote up a Grievance, but it vanished, however, Plaintiff made a copy before it was turned in to C/O Clark with witnesses that signed it." (*Id.* at 59-60).

**August 9, 2018 Hearing**

On August 9, 2018, the Court conducted an evidentiary hearing at which MCCC Warden Charles Ellis testified on behalf of the remaining MCCC Defendants. Plaintiff testified on his own behalf. Warden Ellis testified that if an inmate is unable to resolve an issue informally, the inmate requests a grievance form from the officer's desk and gives it to the living unit officer. According to Warden Ellis' testimony, the living unit officer acknowledges receipt of the

3

grievance and gives the form to the area sergeant. If the area sergeant is unable to resolve the issue, he or she will forward the grievance to the relevant department head. Each officer signs the grievance form before forwarding it on to the next person. The department head makes their comments about the issue and sends the grievance form to the hearing or grievance supervisor. The supervisor "vets the document to make sure that the answers above are appropriate," and brings the form to Warden Ellis for final review. The completed form is then supposed to be returned to the sergeant who then returns it to the inmate. A copy is placed in the inmate's file. Warden Ellis further testified that if an inmate was unsatisfied, he could also have an interview with Warden Ellis.

Warden Ellis testified he did not recall any grievances being submitted by Plaintiff regarding his access to the courts claims but did remember several conversations with Plaintiff about his allegations. He acknowledged one previous grievance submitted by Plaintiff regarding an assault by another inmate resulting in an injury to Plaintiff's eye. (*See* ECF No. 54-1 at 20). During cross-examination by Plaintiff, Warden Ellis asserted that he did not recall discussing with Plaintiff allegations that Davis, Reese, and Santiago-Patterson tampered with Plaintiff's legal mail in 2015. Warden Ellis further stated he did not recall any grievance filed about the alleged mail tampering. Plaintiff argued that he had sent copies of his grievances to the Court and his copies were not accessible to him.[3]

Following the conclusion of the hearing, the Court's files were searched, and an envelope received by the Clerk's Office on June 19, 2017 was located. (*See* ECF No. 40, noting "Additional Voluminous Exhibits filed with Judge Peter G. Sheridan's Chambers"). The envelope contained a copy of the Mercer County Corrections Center Inmate Handbook;

---

[3] The Court struck the majority of Plaintiff's presentation because it was not testimony relevant to the exhaustion question.

Plaintiff's Opposition Affidavit of Truth to Defendants' M. Dillon and N. Botteri Motion to Dismiss (*see* ECF No. 24); and Plaintiff's Opposition Affidavit of Truth with supporting exhibits to Defendants' Reese, Davis, and Santiago Patterson motion to dismiss (*see* ECF No. 24). Included as supporting exhibits were largely illegible administrative copies of administrative remedies concerning Plaintiff's access to the courts and law library. (*See* ECF No. 103).

The Court issued a Notice and Order on August 29, 2018 directing MCCC to file legible copies of the grievances by September 7, 2018. (ECF No. 102). It also permitted any party to submit a brief regarding their prior motions or hearings by September 21, 2018. Only the MCCC Defendants elected to file a brief. (ECF Nos. 106-08).

**October 4, 2018 Hearing**

Plaintiff and counsel for the MCCC Defendants appeared again before the Court on October 4, 2018 to address the documents. Warden Ellis did not appear. The MCCC Defendants argued that the inmate handbook requires inmates to appeal any decision by Warden Ellis before it will be considered fully exhausted. They claimed that Warden Ellis' previous testimony that no grievances had been filed referred to Plaintiff's failure to go "any further in the process of the chain of appeals that [the inmates] had to follow." Plaintiff argued that he could not file an appeal of many of his grievances because he never received an answer from defendants.

The matter is now ripe for decision.

**II.**

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650,

656-57 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.

### A. Exhaustion

The remaining issue to be decided by the Court is whether the MCCC Defendants are entitled to summary judgment on Plaintiff's access to the courts claim based on his failure to exhaust his administrative remedies. After considering the documents provided by the parties and the testimony received at both hearings, the Court finds that the MCCC Defendants have not met their burden of proof on exhaustion by a preponderance of the evidence. *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."). *See also Green v. Parisi*, 478 F.2d 313, 315 (3d Cir. 1973) (defendants asserting an affirmative defense must prove it "by a preponderance of the evidence").

Warden Ellis' certification in support of the summary judgment motion relied on the procedures set forth in the MCCC Inmate Handbook. (ECF No. 55-4 at 1 ¶ 6). Under the "Grievance Procedure" heading, the Handbook appears to contemplate that the inmate will escalate the dispute to the Director of Public Safety and the Office of the Inmate Advocacy in the event he is dissatisfied with the prison's handling of the grievance. (*Id.* at 7). Upon further

review of this section, it is not clear whether an appeal to the Director of Public Safety and the Office of the Inmate Advocacy is mandatory under the prison's grievance procedure or whether it is optional. (*See id.* ("In cases where you have used these institutional procedures and you are dissatisfied with the decision, you *may* then address your problem directly to the Director of Public Safety . . . . *if* you want to pursue the issue further, you *may* contact your attorney or the Office of the Inmate Advocacy . . . . (emphasis added)). In his testimony before the Court, Warden Ellis did not mention an appeal to either of these offices as part of the grievance procedure. He testified that an inmate could have an interview with him if the inmate was dissatisfied with Warden Ellis' response to a grievance, saying "I may have to do something more drastic depending on what their complaint is, get the parties together . . . I will address those issues with the inmate and the staff." Because it is not clear whether MCCC considers Warden Ellis' written response to be the final decision or whether the inmate must appeal that decision, the Court cannot find as a matter of law that Plaintiff failed to exhaust his administrative remedies when he failed to present his claims to the Director of Public Safety and the Office of the Inmate Advocacy.

The MCCC Defendants have also not met their burden of proof because they have not shown that their record-keeping system is reliable. *See Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018) (holding that success of failure to exhaust argument based on the absence of any form "depends on the reliability of the Prison's recordkeeping system"). When asked on August 9, 2018 if Petitioner had used the prison forms to file grievances about his access to the court claim, Warden Ellis claimed he did not remember seeing any grievances from Plaintiff regarding the subject of his lawsuit. The certification Warden Ellis submitted under penalty of perjury certified that Plaintiff had not "complete[d] the internal grievance process concerning his

allegations regarding access to the Courts and/or the Correctional Center law library." (ECF No. 55-4 ¶ 6). However, the forms found in the Court's files indicate that Warden Ellis received and reviewed at least two grievances concerning Pamela Saunders'[4] alleged refusal to notarize Plaintiff's documents, (ECF No. 103 at 10; legible copy at ECF No. 105 at 11); (ECF No. 103 at 12; legible copy at ECF No. 105 at 13), and at least one about Charles Peters' alleged interference with Plaintiff's mail to Sue Regan at the state courts, (ECF No. 103 at 16-17; legible copy at ECF No. 106 at 14). At best, this indicates MCCC does not have a reliable recordkeeping system since the MCCC Defendants were unable to locate these documents to submit with their summary judgment motion. At worst, the MCCC Defendants intentionally withheld the documents prior to the Court's August 29, 2018 order. In either situation, the credibility of the MCCC Defendants is called into doubt.

The Court concludes the MCCC Defendants have failed to meet their burden of proof on the affirmative defense of failure to exhaust based on the records submitted to the Court, the testimony from the hearings, and the Court's credibility determination. Summary judgment is denied on this basis.

**B. Failure to State a Claim**

The Court carries out its obligation to "dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted" by dismissing the access to the courts claims against Paterson, Ellis, Davis, Reese, Peters, Wilson, and Oliver.[5] 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] Plaintiff also refers to Ms. Saunders as "Ms. Marshall." He confirmed at the October 4, 2018 hearing that these names were referring to the same person.

[5] The Court granted previously summary judgment to Ms. Saunders on Plaintiff's claims that she failed to notarize his documents. As Plaintiff clarified during the hearings that there are no other allegations against Ms. Marshall, she shall be terminated from the case for the reasons stated in the Court's June 25, 2018 opinion.

8

Plaintiff alleged Defendants interfered with his ability to send various faxes to the Superior Court and his attorneys, prevented him from going to the law library, refused to notarize documents, and mixed up his mail to the New Jersey state courts. *See Gofan v. Pereksta*, No. 16-8559, 2018 WL 3105425, at *2–4 (D.N.J. June 25, 2018) (summarizing claims). "To establish a cognizable [access to the courts] claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a claim." *Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The relevant injury in an access to the courts claim is the loss of or impairment to a non-frivolous claim regarding Plaintiff's criminal conviction or the conditions of his confinement, not mental or emotional injuries. *Christopher*, 536 U.S. at 415; *Monroe v. Superintendent Coal Twp. SCI*, 597 F. App'x 109, 112–13 (3d Cir. 2015). Plaintiff does not state how the alleged actions of the MCCC Defendants injured his ability to present a non-frivolous claim to the courts or caused him to lose an action.

These claims are dismissed without prejudice.[6] 28 U.S.C. § 1915(e)(2)(B)(ii).

## V.

For the reasons stated above, the Court denies summary judgment on the basis of failure to exhaust. The access to the courts claims against Paterson, Ellis, Davis, Reese, Peters, Wilson, and Oliver are dismissed without prejudice. 28 U.S.C. § 1915(e)(2)(B)(ii). Pamela Saunders, a.k.a Ms. Marshall, shall be terminated from the case for the reasons stated in the Court's June 25, 2018 opinion.

DATED: March 11, 2019

PETER G. SHERIDAN
United States District Judge

---

[6] Because these claims are dismissed without prejudice under § 1915, Plaintiff may move to amend his complaint to re-plead his claims in accordance with Federal Rule of Civil Procedure 15.