UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HENRY SAYE GOFAN JUNIOR,

        Plaintiff,

v.

STEVEN ELMER,

        Defendant.

Civ. No. 16-8559 (PGS) (LHG)

**OPINION**

**PETER G. SHERIDAN, U.S.D.J.**

**I.    INTRODUCTION**

Plaintiff Henry Saye Gofan Junior ("Plaintiff" or "Gofan") is proceeding *pro se* with a civil rights complaint. Presently pending before this Court is Defendant Steven Elmer's ("Defendant" or "Elmer") motion for summary judgment. (*See* ECF 176). For the following reasons, Elmer's motion for summary judgment is granted in part and denied in part.

**II.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III.     FACTUAL AND PROCEDURAL BACKGROUND[1]

The events giving rise to Plaintiff's action against Elmer occurred during the early morning hours of May 6, 2014 in and around the vicinity of the Trenton Train Station. (*See* Def.'s Statement of Material Facts, ECF 176-1 ¶ 1; Pl.'s Dep., ECF 176-6 at 6). Plaintiff was in the train station when he had some "words" with someone. (*See id.*). He was then told by police he had to leave the train station. (*See id.*; *see also* Elmer's Decl., ECF 177 at 2). Plaintiff admits he had been drinking, and Elmer, who was a New Jersey Transit Police Officer at the time, states Plaintiff appeared heavily intoxicated. (*See* Pl.'s Dep., ECF 176-6 at 7; Elmer's Decl., ECF 177 at 2). Plaintiff then testified at his deposition he went outside and was talking to a female and a male when a police officer drove by. (*See* Pl.'s Dep., ECF 176-6 at 8). Subsequently, Plaintiff stated he drove off. (*See id.*) Elmer observed Plaintiff get into a vehicle's passenger side and then move over to the driver's seat and begin to drive away. (*See* Elmer's Decl., ECF 177 at 2).

Plaintiff states he noticed upon driving off that an officer had his siren lights activated on his vehicle behind him. (*See* Pl.'s Dep., ECF 176-6 at 8). Plaintiff states he then tried to park his car but hit a truck and stopped. (*See id.* at 8-9). Elmer though declares Plaintiff led him on a high-speed chase through Trenton before Plaintiff's vehicle came to a stop after hitting a truck. (*See* Elmer 's Decl., ECF 177 at 3).

Elmer stopped behind Plaintiff's vehicle and approached Plaintiff's vehicle on the driver's side. (*See id.*). Plaintiff's window was open, and Plaintiff states Elmer asked Plaintiff for his license and registration. (*See* Pl.'s Dep., ECF 176-6 at 9). Plaintiff told Elmer he did not have a license. (*See id.*) According to Plaintiff, Elmer then asked Plaintiff to exit the vehicle. (*See id.*).

---

[1] Plaintiff initially sued numerous defendants. This Court though will only discuss the relevant facts and procedural history as it relates to his claims against Elmer in this opinion.

However, Plaintiff told Elmer that the door did not work. (*See id.*). Next, Plaintiff claims Elmer maced him without warning. (*See id.*).

Elmer's version of his interaction with Plaintiff upon Plaintiff's vehicle stopping differs from Plaintiff. Elmer states in his declaration that he gave orders to Plaintiff to exit the vehicle. (*See* Elmer's Decl., ECF 177 at 3). After Plaintiff was non-compliant with Elmer's orders, Elmer employed his "OC" spray on Plaintiff. (*See id.*)

A Trenton Police Office then arrived at the scene. Elmer and this officer pulled Plaintiff from the vehicle through the passenger side. (*See id.*) According to Plaintiff, he was put on the ground and Elmer's knee was on the back of Plaintiff's neck. (*See* Pl.'s Dep., ECF 176-6 at 10). According to Elmer, Plaintiff was resisting and not permitting Elmer to handcuff him. (*See* Elmer Decl., ECF 177 at 3). Plaintiff though was eventually handcuffed. (*See* Pl.'s Dep., ECF 176-6 at 10). Plaintiff was placed in the back of the police car and taken to the hospital. (*See id.* at 10-11). Elmer states Plaintiff refused a breathalyzer test so he transported him to the hospital where a blood test could occur. (*See* Elmer Decl., ECF 177 at 4).

At the hospital, Plaintiff refused to give him name when asked. (*See* Pl.'s Dep. ECF 176-6 at 1.). While at the hospital, Plaintiff's fingerprints were taken. (*See id.* at 12.) According to Plaintiff, Elmer took his fingerprints because Plaintiff was refusing to state his name. (*See id.*) While at the hospital, Elmer also told the hospital staff to take a sample of Plaintiff's blood. (*See id.*). According to Elmer, he obtained a warrant to get Plaintiff's blood prior to ordering hospital staff to take Plaintiff's blood. (*See* Elmer's Decl., ECF 177 at 5). Plaintiff contests Elmer's statement that he obtained a warrant. (*See* ECF 1 at 21; ECF 182 at 42-43).

In 2016, Plaintiff brought this federal civil rights suit against numerous parties, including Elmer. (*See* ECF 1). In February 2017, this Court screened Plaintiff's initial complaint and

4

permitted Plaintiff's claims against Elmer to proceed. (*See* ECF 7). In June, 2017, Elmer filed a motion to dismiss. (*See* ECF 38). In October 2017, this Court administratively terminated Elmer's motion to dismiss, but permitted him to file a motion for summary judgment within thirty days of filing an answer to the complaint. (*See* ECF 50). Elmer then filed an answer. (*See* ECF 57).

In December, 2017, Elmer filed his first motion for summary judgment. (*See* ECF 68). In June 2018, this Court granted in part and denied in part Elmer's first motion for summary judgment. (*See* ECF 92 & 93). At that time, this Court stated as follows:

> Plaintiff's final set of claims, false arrest, illegal search and seizure, and excessive force, are against New Jersey Transit Police Officer Steven Elmer. Officer Elmer asserts he is entitled to qualified immunity.
>
> Plaintiff alleges that Officer Elmer arrested him without probable cause on May 6, 2014. Compl. ¶ 6. According to the complaint, Plaintiff was at a train station when two transit officers told him to leave. (*Ibid.*). He went and sat in his vehicle and pulled away from the station, but stayed nearby because he was waiting for someone with a friend. (*Ibid.*). A transit officer drove by slowly, and Plaintiffs friend told him to leave because Plaintiff did not have a license. (*Id.* at 1). Plaintiff drove away from the station and was driving down East State Street when he noticed a cop car with its lights on behind him. (*Ibid.*). Plaintiff turned onto Cleveland Street. He tried to park his car, but he hit a truck that was parked in an alleyway. (*Id.* at 2). The officer drove past Plaintiff, backed up, and got out of his vehicle. (*Ibid.*). He instructed Plaintiff to get out of the car but Plaintiff said he could not exit because the door was stuck. (*Ibid.*). According to Plaintiff, the officer then attempted to drag him out of the car's window and maced him. (*Ibid*). The officer then pulled Plaintiff out of the passenger-side door, put him on the ground, put his knee on Plaintiff's neck, handcuffed him, and took him to his car. (*Ibid.*). Plaintiff then alleges his blood and fingerprints were taken without his consent. (*Ibid.*).
>
> Officer Elmer is entitled to qualified immunity on Plaintiff's false arrest claim as Plaintiff has not sufficiently alleged a violation of a constitutional right. *See Mazuka v. Rice Twp. Police Dep't*, 655 F. App'x 892, 894 (3d Cir. 2016) ("The right implicated in this case

5

is the right to be free from arrest without probable cause, which, despite its breadth, is a bedrock constitutional principle and a clearly established right." (citing U.S. Const. amend. IV) ). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "Any law enforcement officer may, without a warrant, arrest any person violating in his presence any provision of chapter 3 of this Title ...." N.J. STAT. ANN. § 39:5–25. Plaintiff admitted to Officer Elmer that he was driving without a license, N.J. STAT. ANN. § 39:3–10. (ECF No. 48 "Yes, I did admit to the fact that I had no license, and I never did, No license or permission is required for Travel."). *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Plaintiff's admission satisfies the presence requirement. *State v. Dickens*, 325 A.2d 353, 354–55 (N.J. Super. Ct. App. Div. 1974) ("To satisfy the 'presence' requirement, an arresting officer need not be a witness to the offense. An arrest may be made on the admission of the offender to the arresting officer, even though without the admission the officer would not have any knowledge of the offense."). Furthermore, the New Jersey Superior Court Appellate Division has held that § 39:3–10 permits a term of imprisonment or a fine to be imposed on drivers who have never been licensed. *State v. Carreon*, 96 A.3d 305 (N.J. Super. Ct. App. Div. 2014). It was therefore reasonable for Officer Elmer to arrest Plaintiff for driving without a license. A claim for false arrest cannot survive if probable cause exists "as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Officer Elmer is therefore entitled to qualified immunity on the false arrest claim.

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) ). "The inquiry into whether this right was violated requires a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 1865–66 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This balancing requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

6

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit expanded on *Graham* and concluded that officers should also balance "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). "[T]he central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

Construing the facts in the light most favorable to Plaintiff, he was subject to arrest for driving without a license after being involved in an accident, a non-violent offense. Plaintiff was unable to exit his vehicle when instructed to by Officer Elmer due to a malfunctioning door, at which time Officer Elmer maced him and attempted to pull Plaintiff out of the driver's side window. Compl. at 2. Once Officer Elmer forcibly removed Plaintiff from the passenger-side door, Officer Elmer put Plaintiff on the ground, put a knee on Plaintiff's back, and handcuffed him. (*Ibid.*). There is no indication Plaintiff posed a danger to the community or officer, or that he was armed.

Officer Elmer has not presented the Court with any evidence contradicting the version of events as set forth in the complaint. Officer Elmer's argument would therefore seem to be that even if the encounter took place exactly as Plaintiff alleges it did, he is entitled to qualified immunity for his use of force based on Plaintiff's resisting arrest. [FN 8] Officer Elmer states he was entitled to use physical coercion because Plaintiff was uncooperative in failing to consent to the blood and fingerprint tests, (ECF No. 68–5 at 25); these tests took place after the arrest, however. Again construing the limited information in Plaintiff's favor, any "resistance" consisted of Plaintiff being unable to exit his vehicle when Officer Elmer ordered him out of the car because Plaintiff's car door was broken. If Plaintiff is believed, as the Court must in a summary judgment qualified immunity analysis, a reasonable jury could conclude Officer Elmer used unreasonable force by spraying Plaintiff with mace and dragging him out of the car.

> [FN 8] The fact that Plaintiff was charged with resisting arrest does not mean the use of force was

7

> per se reasonable. *See Nelson v. Jashurek*, 109 F.3d 142, 146 (3d Cir. 1997). Moreover, Plaintiff did not plead guilty to resisting arrest. (ECF No. 68–3 at 8).
>
> "To conclude that a right is 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Green v. N.J. State Police*, 246 F. App'x 158, 162 (3d Cir. 2007) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (alteration in original)). Under the factors set forth in *Graham and Sharrar*, a reasonable officer would know that spraying an arrestee with mace and dragging him out of a car was an excessive use of force just because a car door was stuck. *See Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). Because there has been no discovery on this claim, leaving many factual issues unresolved such as the reason Plaintiff did not exit the car, Officer Elmer is not entitled to qualified immunity on the excessive force charge at this time. *See Paige v. City of New Brunswick*, 680 F. App'x 107, 112 (3d Cir. 2017) (denying qualified immunity when "facts essential to determining the reasonableness of the police action are disputed"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[A] decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").
>
> Officer Elmer does not address Plaintiff's claims that he ordered hospital staff to take Plaintiff's blood and fingerprints without a warrant, Compl. ¶ 6, beyond stating that Plaintiff has failed to state a valid claim against him. (ECF No. 68–5). Because the parties have not adequately briefed the issues, the Court denies summary judgment without prejudice.

*Gofan v. Pereksta*, No. 16-8559, 2018 WL 3105425, at *12–14 (D.N.J. June 25, 2018). Thus, after this Court's June, 2018 decision, Plaintiff's remaining claims against Elmer were for excessive force as well as fingerprinting and taking blood without a warrant.

The parties then conducted further discovery with respect to Plaintiff's claims against Elmer. Plaintiff was deposed by Elmer's counsel on January 30, 2020. (*See* Pl.'s Dep., ECF 176-6).

Elmer filed another motion for summary judgment in August, 2020. (*See* ECF 176). Elmer argues he is entitled to qualified immunity on Plaintiff's remaining claims against him. (*See id.* at 176-2). Plaintiff then filed numerous filings in response. (*See* ECF 179, 182-88, 193). Elmer did not file a reply brief.

## IV. DISCUSSSION

### A. Qualified Immunity Generally

As recently reiterated by the United States Court of Appeals for the Third Circuit:

> Police officers, embodying the authority of the state, are liable under [42 U.S.C.] § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). In the familiar qualified immunity analysis, the court asks "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). The court may address the steps in either order. *Pearson*, 555 U.S. at 236, 129 S. Ct. 808.
>
> When considering whether a right was clearly established, our "focus is on whether the officer had fair notice that her conduct was unlawful," so "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, ––– U.S. –––––, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the ... constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, ––– U.S. –––––, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam)).

*El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020).

> i. *Qualified Immunity Applied to Plaintiff's Excessive Force Claim*
>
>> "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont*, 637 F.3d at 182-83. "A seizure occurs '[w]henever an officer restrains the freedom of a person to walk away.'" *Rivas* [*v. City of Passaic*], 365 F.3d [181,] 198 [(3d Cir. 2004)](alteration in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

*El,* 975 F.3d at 336.

Elmer does not contest a seizure occurred here. Instead, he asserts his actions against Plaintiff were reasonable which entitles him to qualified immunity.

> When determining the reasonableness of an allegedly excessive use of force, "the standard is whether the police officer's 'actions [were] objectively reasonable in light of the facts and circumstances' ..., regardless of the officer's intent or motivation." [*Rivas*, 365 F.3d at 198] (first alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). We consider factors including "the severity of the crime at issue, whether the suspect[s] pose[ ] an immediate threat to the safety of the officers or others, and whether [they are] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. 1865. We also assess the physical injury to the plaintiff, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley*, 499 F.3d at 209-11.

*El*, 975 F.3d at 336.

The application of pepper spray may . . . potentially state a claim for constitutionally excessive force. *Davis v. Egg Harbor Twp.*, No. 14-4213, 2017 WL 2423053, at *8 (D.N.J. June 5, 2017) (citing *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 739 (11th Cir. 2010); *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002); *Park v.*

10

*Shiflett*, 250 F.3d 843, 852-53 (4th Cir. 2001)). Courts are to evaluate the requisite objective reasonableness from the perspective of the officer at the time, and not with the benefit of hindsight. *See Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). This is because officers are often required to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Whether an officer used excessive force should frequently remain a question for the jury. *See Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)). Summary judgment is not appropriate on an excessive force claim if there are material disputes of fact and unresolved credibility determinations. *See Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir. 1995) (reversing the district court's grant of summary judgment on plaintiffs' excessive force claim against several officers). If the facts taken in the light most favorable to plaintiff suggest an officer applied force against a cooperative individual, the jury should resolve the question of fact whether the use of force was reasonable. *See Hayhurst v. Upper Makefield Twp.,* No. 06–3114, 2007 WL 1795682, at *6-7 (E.D. Pa. June 20, 2007) (where plaintiff's factual account suggested she was trying to comply with the officers, the reasonableness of the officers' use of handcuffs was a question for the jury). Nevertheless, if the plaintiff's version of the facts is unreliable and uncorroborated, the court may grant summary judgment to defendant police officers on an excessive force claim. *See Brown v. Borough of Chambersburg,* 903 F.2d 274, 277–78 (3d Cir. 1990) (affirming summary judgment for officers where the plaintiff's account of events was supported only by his own testimony, which was compromised by "his drunken condition and his admitted inability to remember" and contradicted by disinterested witnesses).

11

In screening Plaintiff's complaint, this Court noted the low severity of the potential crime of driving without a license. That was based on the allegations set forth in the complaint. However, Elmer notes in his certification Plaintiff appeared heavily intoxicated at the train station and then saw him drive off in a car. Therefore, this Court will also presume the potential crime was also driving while intoxicated.

By the time Elmer interacted with Plaintiff prior to the use of force, Plaintiff was no longer driving. This is an important point in analyzing *Graham's* first factor. More specifically, as one court has noted:

> [plaintiff] admits driving while intoxicated is a serious offense, but correctly points out that by the time the officers interacted with him, he was no longer driving. (Doc. No. 39 at 8). While this does not change the severity of the offense—drunk driving does not cease to be a moderately severe crime simply because it has been completed—it does affect the weight the severity of the offense should be given when determining the appropriate level of force. To understand why, one must only consider why the severity of the crime at issue is relevant to the analysis in the first place.
>
> The three factors identified in *Graham* are meant to help courts determine whether the force used to effect a seizure is reasonable under the Fourth Amendment, a question which depends on a careful balancing of the "'nature and qualify of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S. Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)) (further citation omitted). The severity of the crime at issue is relevant to this balancing because it speaks to the governmental interests at stake. But the severity of the crime does not, by itself, justify greater levels of force when the suspect is no longer in a position to continue the crime.
>
> Here, the government had an interest in preventing [plaintiff] from continuing to operate a vehicle while intoxicated, as well as interest in arresting and prosecuting [plaintiff] for his earlier operation of a vehicle while intoxicated. But neither of these interests is advanced in any way by the level of force the officers used. This is similar to the way there is no legitimate government

>interest in the use of force against a suspect who has already been incapacitated, regardless of the crime they committed, *see Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 608 (6th Cir. 2006) (collecting cases and stating "[c]ases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.") (quoting *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006)). In both situations, the severity of the crime at issue is irrelevant because there is no risk of the suspect continuing to commit the crime or escaping prosecution for committing it in the first instance.
>
>Under these circumstances, the moderate severity of the crime [plaintiff] was suspected of committing does not, on its own, provide any support for the force [plaintiff alleged was used.[FN 7]
>
>>[FN 7] Of course, [plaintiff]'s intoxication is still relevant to the analysis. But his operating a vehicle while intoxicated, as opposed to, for example, jaywalking while intoxicated, does not make it any more reasonable for the officers to use the level of force alleged.

*Ellis v. Timm*, No. 18-244, 2020 WL 7024674, at *5–6 (N.D. Ohio Nov. 30, 2020). Similar to *Ellis*, this Court does not find that the severity of Plaintiff's possible driving while intoxicated necessarily warrants finding Elmer's actions were reasonable given that Plaintiff was no longer operating his vehicle. It is, and of course remains though, but one factor this Court considers in its overall analysis.

Next, this Court examines whether Plaintiff posed an immediate threat to the safety of officers or others. Factual disputes remain which require finding this factor does not weigh in Elmer's favor. While Elmer's declaration indicates Plaintiff took him on a high-speed chase through Trenton, Plaintiff's testimony during his deposition indicates he tried to "park" shortly after he realized Elmer had his emergency lights on. At summary judgment, this Court must view factual disputes in the light most favorable to the Plaintiff. Considering these key factual disputes

13

regarding the length of time between when Elmer began pursuit of Plaintiff and the time Plaintiff's vehicle was stopped, the jury will presumably have to weigh the credibility of Plaintiff's versus Elmer's version of what transpired leading up to when Plaintiff's vehicle was stopped. Furthermore, while potentially driving while intoxicated certainly creates a public risk, in this case, by the time Elmer approached Plaintiff's vehicle, it is undisputed that it was stopped which presumably lessened any risk to the public prior to Elmer discharging his "OC" spray.

Nonetheless, what is very relevant to this Court's analysis is whether Plaintiff was non-compliant with Elmer's orders. *See Martin for Estate of Webb v. City of Newark*, 762 F. App'x 78, 83 (3d Cir. 2018) (noting in part officer's actions were reasonable when faced with non-complaint driver); *see also Alday v. Groover*, No. 12-108, 2014 WL 1320093, n.5 (S.D. Ga. Mar. 31, 2014) (citing *Buckley v. Haddock,* 292 F. App'x 791, 793–94 (11th Cir. 2008) (finding the discharge of a prong—mode Taser to be reasonable against an arrestee at night who would not stand up from the road per the officer's requests); *Proch v. DeRoche,* No. 08-484, 2011 WL 6841319, at *8 (N.D. Fla. Dec. 20, 2011) ("[E]ven if [an arrestee] did not physically struggle, show overt aggression, or otherwise fight prior to being tased, the actions in which [the arrestee] admittedly engaged—including refusing to obey commands and placing his hands in front of him on a wall instead of behind him—amounted to active resistance to arrest."); *Godman v. City of Largo,* No. 08-333, 2009 WL 1651524, at *4 (M.D. Fla. June 10, 2009) (stating that use of pepper spray may be reasonable where an individual is "refusing police requests, such as requests to enter a patrol car or go to the hospital" (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1348 (11th Cir.2002))). Again though, factual disputes require finding this factor does not weigh in Elmer's favor. First, this Court has already noted the factual disputes of whether Plaintiff was attempting to flee and/or whether a high-speed pursuit occurred. Furthermore, immediately prior

to using "OC" spray on Plaintiff, while Elmer states Plaintiff failed to obey his orders, Plaintiff states when Elmer asked him to exit his vehicle, Elmer told him his door was broken and, then, without warning, he was pepper sprayed. The factual disputes regarding whether Plaintiff was disobeying Elmer's orders should be weighed by the jury as they will most likely turn on who the jury finds more credible with respect to their version of what transpired immediately prior to Elmer using the "OC" spray.

With respect to Elmer's further actions such as yanking Plaintiff out of the car and how he handcuffed Plaintiff, as this Court noted in denying Elmer's first motion for summary judgment:

> construing the . . . information in Plaintiff's favor, any "resistance" consisted of Plaintiff being unable to exit his vehicle when Officer Elmer ordered him out of the car because Plaintiff's car door was broken. If Plaintiff is believed, as the Court must in a summary judgment qualified immunity analysis, a reasonable jury could conclude Officer Elmer used unreasonable force by spraying Plaintiff with mace and dragging him out of the car.

*Gofan*, 2018 WL 3105425, at *13. While Elmer has come forward with more information – such as statements in his certification that Plaintiff was not complying with his orders, this is in essence contested by Plaintiff and therefore remains a factual issue for the jury to decide.[2]

This Court though must also consider other factors prior to reaching a decision on whether Elmer's actions were reasonable. Plaintiff admitted in his deposition that he did not sustain any major injuries because of this incident with Elmer. (*See* Pl.'s Dep., ECF 176 at 13-14). Thus, this factor weighs in favor of Elmer. *See Fisher v. Matthews*, 792 F. Supp. 2d 745,

---

[2] Elmer's reliance on Judge Bumb's decision in *Davis*, 2017 WL 2423053 in arguing his actions were reasonable is unavailing. In that case, the plaintiff basically conceded he was not going to abide by the officers' order to exit car prior to the use of pepper spray. *See id.* at *9. However, as noted above, in this case, factual disputes regarding Plaintiff's compliance (or non-compliance) with Elmer's orders remain. These factual disputes at this stage must be viewed in Plaintiff's favor.

775 (M.D. Pa. 2011) (granting summary judgment in favor of officers noting in part plaintiff only received minor injuries). Furthermore, as Elmer's actions were in the context of effectuating an arrest, this factor also weighs in his favor. Whether Plaintiff was violent or dangerous though remains an open question in light of the factual disputes noted above. Finally, while Elmer may have been the only officer on the scene when the "OC" spray was used, by the time Plaintiff was yanked from his vehicle, another officer had arrived on the scene such that the officers now outnumbered Plaintiff. Thus, this factor (at least with respect to what occurred after the "OC" spray was used) does not favor Elmer.

Given the factual disputes described above and upon analyzing all the relevant factors, this Court cannot find as a matter of law at this summary judgment stage that Elmer's actions in using "OC" spray and subsequently yanking Plaintiff out of his vehicle and subsequent way Elmer effectuating handcuffing Plaintiff was reasonable.

This though does not end this Court's qualified immunity analysis. Indeed, Elmer also argues he is entitled to qualified immunity on Plaintiff's excessive force claim because, "[a]t most, [it] constituted reasonable mistake as to the force he was allowed to use." (ECF 176-2 at 21). As a panel of the United States Court of Appeals for the Third Circuit has noted:

> [i]n the context of excessive force claims, we have relied on the factors set forth in *Graham* and *Sharrar* in evaluating whether an officer made a reasonable mistake. *See Estate of Smith v. Marasco,* 430 F.3d 140, 149–150 (3d Cir.2005); *Couden v. Duffy,* 446 F.3d 483, 497 (3d Cir. 2006). We have stated that these factors "are well-recognized," *Couden,* 446 F.3d at 497, and that when an officer applies them in "an unreasonable manner, he is not entitled to qualified immunity." *Estate of Smith,* 430 F.3d at 150.

*Green v. New Jersey State Police*, 246 F. App'x 158, 162–63 (3d Cir. 2007).

Giving Plaintiff all proper inferences as this Court must at summary judgment - namely the factual dispute regarding the circumstances of the pursuit of Plaintiff's vehicle by Elmer,

telling Elmer his door was stuck when Elmer told him to exit his car and Elmer's immediate use of "OC" spray thereafter as testified to by Plaintiff at his deposition, this Court finds the use of "OC" spray and subsequent use of force against Plaintiff may have been applied in an unreasonable manner. As such, Elmer is not entitled to summary judgment based on qualified immunity on Plaintiff's excessive force claim.

B. Fingerprinting

Plaintiff's second claim is that Elmer violated his constitutional rights when Plaintiff was fingerprinted at the hospital without a warrant. The Fourth Amendment does not bar the fingerprinting of a properly seized person. *See See Davis v. Mississippi*, 394 U.S. 721, 727 (1969) ("Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search."); *Tillison v. Delaware*, No. 19-229, 2020 WL 2559797, at *3 (D. Del. May 20, 2020) (noting because complaint does not state claim for unlawful traffic stop or seizure, complaint fails to state claim against defendant for illegally obtaining plaintiff's fingerprints). As this Court previously noted in a prior opinion, it was reasonable for Elmer to arrest Plaintiff. *See Gofan*, 2018 WL 3105425, at *13. At a minimum, Plaintiff admits he told Elmer he was driving without a license. Accordingly, Elmer is entitled to summary judgment on Plaintiff's fingerprinting claim because he was properly seized.

C. Blood Draw

Finally, Plaintiff asserts Elmer is liable because he ordered a warrantless blood draw at the hospital without his consent. (*See* ECF 1 at 21). Elmer argues he is entitled to summary judgment on this claim because he did in fact obtain a warrant prior to Plaintiff's blood draw. (*See* ECF 176-2 at 23-24). Elmer relies on his certification in which he states he did obtain a warrant prior to the blood draw. (*See* Elmer's Decl., ECF 177 at 4-5). However, Elmer did not

17

submit a copy of this warrant. Plaintiff continues to maintain the allegations of his complaint, namely, that Elmer is lying about obtaining a warrant. (*See* ECF 182 at 42-43; ECF 1 at 21).

Based on this record, awarding Elmer summary judgment would require this Court to find him more credible than Plaintiff given that he has failed to supply this Court with a copy of the warrant. This is plainly inappropriate for this Court to do at the summary judgment stage. Therefore, Elmer's request for summary judgment on Plaintiff's claim of a warrantless blood draw is denied.

## V. CONCLUSION

For the foregoing reasons, Elmer's motion for summary judgment is granted in part and denied in part. Elmer is entitled to summary judgment on Plaintiff's claim related to being fingerprinted. However, Elmer's motion for summary judgment is denied on Plaintiff's claims of excessive force and a warrantless blood draw. An appropriate order will be entered.

DATED: March 31, 2021

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.